## RAY CROVOY TANKEL v. UNION CENTRAL LIFE INSURANCE COMPANY.[1]

January 10, 1936.

No. 30,759.

[1]Reported in 264 N. W. 693.

166

*Louis H. Schnedler* and *Strong, Covell & Strong,* for appellant.
*Louis B. Schwartz,* for respondent.

HOLT, JUSTICE.

Plaintiff brought this suit to set aside a foreclosure by advertisement, the basis for the attack being that the notice of foreclosure was published only four times instead of the six publications required under 2 Mason Minn. St. 1927, § 9604.

Defendant answered setting up the following facts by way of confession and avoidance: On March 1, 1929, the then record owners of the premises involved executed a note secured by real estate mortgage upon said premises in the amount of $6,500. That note and mortgage were later acquired by defendant. In 1933 there was default, and defendant proceeded to foreclose by advertisement. The title was registered. Notice in the usual form was issued and published four weeks, that is to say, on October 28, November 4, 11; and 18, 1933. The sale date was therein set for December 14, 1933, at two o'clock in the afternoon. On November 9, 1933, plaintiff and husband filed in the district court of Hennepin county a verified complaint under the provisions of L. 1933, c. 339, part 1, § 2 (3 Mason Minn. St. 1934 Supp. § 9633-3), praying that the mortgage foreclosure proceedings by advertisement be permanently enjoined, postponed, or changed to foreclosure by action. On the same date and pursuant to the invoked remedial act, the district court, upon plaintiffs' application therefor, signed an order requiring "that the mortgage foreclosure proceedings by advertisement mentioned in the complaint herein be and the same hereby are postponed until the further order of this court." The order further directed that a copy thereof and of the summons and complaint "be forthwith served upon the defendant or its attorney" and that a copy of the order be served upon the sheriff or one of his deputies. On the same day, too, plaintiffs in that cause deposited with the clerk of the district court $12.83, that being the costs then accrued upon the foreclosure by advertisement proceedings. This, too, was done pur-

suant to the mentioned section under which the proceeding was had. That order, together with the summons and complaint, was served on that day upon defendant's attorney who had in hand the foreclosure of the mortgage, and service of order was also made upon the sheriff. Because of the court's order no further publications were had except as noted.

The order hereinbefore referred to was made returnable December 8, 1933. In the regular course of events it was referred to Judge Leary for hearing and came duly before him on December 14 at 9:30 o'clock in the forenoon. Plaintiffs in that case did not appear. Upon defendant's motion in that behalf the court made an order denying all relief prayed for in the complaint and dismissed the cause. The court further ordered that defendant "proceed with its mortgage foreclosure sale * * * as published in its notice * * * and that sale be held on the 14th day of December, A. D., 1933, at 2:00 o'clock P. M. It is further ordered, that the filing of the verified complaint by the plaintiffs herein be a waiver of the further publication of said notice and of the notice of postponement of the mortgage foreclosure sale and the sale as fixed herein shall be deemed to be a sale postponed in lieu of the time of sale specified in the published notice of mortgage foreclosure sale." The sale was had in conformity with the original notice and said court order. Defendant became the purchaser at the sale, and the usual sheriff's certificate of sale was issued and delivered. No redemption was made, and no other or further proceeding in any way questioning the foreclosure sale was taken by plaintiff or by her husband until the present action was brought March 16, 1935. On the contrary, an application was made by them for a return of the original deposit, and a court order secured that this be done.

Plaintiff demurred to that portion of defendant's answer (to which we have made reference and from which we have secured the basis for the foregoing statement of facts) upon the ground that the same did not state facts sufficient to constitute a defense to plaintiff's cause. That is the only problem presented for review. The court sustained the demurrer, and this appeal was taken from that order.

Of value here is the memorandum of the trial court attached to and made a part of that order. It reads:

"When the matter of Ray Crovoy Tankel, plaintiff, against the Union Central Life Insurance Company, defendant, file No. 344,626, came on before the undersigned upon December 14th, 1933, there was no appearance on the part of plaintiff and the action upon motion of defendant was dismissed. It was in the nature of an ex parte proceeding. The court did not understand that the publications required in foreclosure of mortgages by advertisement had not been fully made as required by statute, and it was not intended by its order to do other in the way of finding waiver than is provided for in Chapter 339, Laws of 1933. This statute provides that the filing of the verified complaint shall be deemed a waiver of publication of notice of postponement of the foreclosure sale. It waives no other required publication. The court by its order could not enlarge upon the statute. Section 9604, General Statutes of 1927, is mandatory and cannot be waived by order of court.

"The demurrer therefore in this matter must be sustained."

As set forth in plaintiff's complaint, the point upon which reliance is placed is that the foreclosure was abortive for the sole reason that the publication of the notice of foreclosure was limited to four weeks and as such not in compliance with the statute, § 9604. There can be no question about the insufficiency of the publication as measured by the requirements of that section. Many cases have been decided by this court sustaining that position. White v. Mazal, 192 Minn. 522, 257 N. W. 281; 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 6337. Defendant concedes this point so there is no issue in respect of it.

For defendant it is urged that the moratorium act (L. 1933, c. 339, § 2) supersedes and takes the place of § 9604. In the moratorium act it is provided that "every law and all the provisions thereof now in force insofar as inconsistent with the provisions of this act, are hereby suspended until May 1, 1935." In defendant's behalf it is also pointed out that inasmuch as the moratorium act provides that the owner of the mortgaged property may, at any time

prior to sale, file a complaint praying that the foreclosure be changed to one by action, and if upon presentation of such complaint the court believes the relief sought to be "equitable and just," it may issue an *ex parte* order postponing the pending "foreclosure proceedings," it necessarily follows that one who so invokes the aid of the court subjects himself to its jurisdiction and must abide by the court's findings and order when and as such are made. The section under which plaintiff and husband originally sought relief further provides that upon the hearing of the issue on its merits the court may "further postpone such sale." As a condition precedent to the granting of the *ex parte* order plaintiff must deposit with the clerk of court all costs incurred by the foreclosing creditor (except attorney's fees) up to the time of the making of the application and the procurement of the order. Therefore, it seems clear that the statute contemplates no further incurring of expense by the mortgage holder pending the outcome. If plaintiff's position is to prevail it might mean that a mortgage debtor could repeat the proceedings that plaintiff here sought and obtained and thereby compel the mortgage creditor to foreclose by action to prevent just what happened here.

It is not necessary to decide that the moratorium act in any way limits the statutory requirements (§ 9604) respecting foreclosure sales by advertisement. Sufficient for determination here is decision of the single question whether the court acted within its authority when it issued the *ex parte* order on November 9 and the final order of dismissal on December 14. There can be no denial that the court had jurisdiction of the subject matter and of the parties. It seems equally plain that the court, in view of this jurisdiction, necessarily possessed the authority to determine whether the foreclosure proceedings should be carried out as originally noticed or if there should be a new and different proceeding had.

What the court intended to do when it made the order of December 14 must necessarily be measured by the language of its then order. The language therein used and hereinbefore quoted can leave no doubt as to meaning. The memorandum made and attached to the order sustaining plaintiff's demurrer cannot be considered as

in any way limiting the effect of its prior order of December 14, 1933. That order was final, and from it an appeal or other review would' lie. It imports finality and under the moratorium law was such. This still stands as an insurmountable barrier to plaintiff's present claim. Never having been questioned directly, it cannot now be attacked collaterally. For that reason we conclude that the order herein involved should be reversed.

So ordered.

DEVANEY, CHIEF JUSTICE, took no part in the consideration or decision of this case.

